## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KIMBERLY STARLING**, *on behalf of herself and others similarly situated,*<br><br>  *Plaintiff,*<br><br>v.<br><br>**OAK STREET HEALTH, INC.,**<br><br>  *Defendant.* | Case No.: 1:24-cv-4782<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### NATURE OF THIS ACTION

1. This action arises out of Defendant Oak Street Health, Inc.'s ("Defendant" or "Oak Street") deceptive telemarketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").

2. Oak Street operates primary care centers within the United States serving Medicare eligible patients.

3. Oak Street employs a multichannel marketing strategy to solicit new patients to its primary care centers.

4. One such strategy is telemarketing via unsolicited cold calls.

5. Because Medicare is generally reserved to individuals that are 65 years of age or older, Oak Street targets one of America's most vulnerable populations – its senior citizens.

6. Many of these calls are made to individuals (most of whom are senior citizens) who registered their telephone numbers on the National Do-Not-Call Registry because they did not want to receive these types of telemarketing calls.

7. The TCPA prohibits making telemarketing calls to phone numbers that are registered on the National Do-Not-Call Registry.

8.     Accordingly, Plaintiff Kimberly Starling ("Plaintiff" or "Ms. Starling") brings this action on behalf of herself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

10.     This Court has jurisdiction over Oak Street because Oak Street is headquartered in this District and conducts business transactions in this District.

11.     Venue is proper in this District because a substantial part of the events or omissions giving rise to Ms. Starling's claims occurred in this District.

12.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

## PARTIES

13.     Plaintiff Kimberly Starling is a natural person who at all relevant times resided in Southlake, Texas.

14.     Ms. Starling is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

15.     Oak Street is a corporation organized and existing under the laws of the State of Delaware, with headquarters located at 30 West Monroe Street, Suite 1200, Chicago, Illinois 60603.

16.     Oak Street is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

18.     Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

19.     These regulations are codified at 47 C.F.R. § 64.1200(e)(1-2).

20.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

21.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

22.     The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

23.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

3

24.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

25.    These regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d)(1), (2), (3), (6).

26.    These regulations also require persons or entities making telemarketing calls to accurately provide "the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

27.    These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

28.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

29.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> "Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o

---

[1] The regulations draw a distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 C.F.R. § 64.1200(f)(14), which can be established by a "voluntary two-way communication." 47 C.F.R. § 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 C.F.R. § 64.1200(f)(5)(i). "Telemarketing purposes," on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 C.F.R. § 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call procedures.

> person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]'" 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

30. These requirements are separate but cumulative. In other words, a company must comply with both the section 64.1200(d) regulations *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

31. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g.*, *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

32. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

33.     Ms. Starling is the user of telephone number (XXX)-XXX-5727.

34.     Ms. Starling's telephone number (XXX)-XXX-5727 is used for residential purposes and is not associated with a business.

35.     Ms. Starling's telephone number (XXX)-XXX-5727 has been on the National Do-Not-Call Registry since May 24, 2021.

36.     Ms. Starling personally placed her telephone number (XXX)-XXX-5727 on the National Do-Not-Call Registry because she did not want unsolicited telemarketing calls, such as the ones at issue here.

37.     On or about October 2, 2023, Ms. Starling began receiving telephone calls from Oak Street.

38.     The first call Ms. Starling received to her telephone number (XXX)-XXX-5727 from Oak Street occurred on October 13, 2023, at around 2:43pm, and came from telephone number (659) 265-1047

39.     Ms. Starling had no business relationship with Oak Street at any time and never gave her express written consent or invitation to be called.

40.     During the October 13, 2023 call, Oak Street's telemarketer stated he was calling from "Oak Street".

41.     In response, Ms. Starling asked "Oak Street? What is that?"

42.     Oak Street's telemarketer stated: "I want to let you know about a new type of doctor's office in your neighborhood, which caters to Medicare members and offers comprehensive primary care services."

43.     Oak Street's telemarketer continued advising Ms. Starling that Oak Street's

services include virtual and home visits, same day appointments at most locations, and even cooking classes.

44.     Ms. Starling abruptly cut off Oak Street's telemarketer during his "sales pitch" and stated, "I'm not interested. Don't call me again."

45.     On January 29, 2024, at around 2:34pm, Ms. Starling received another call from Oak Street.

46.     This call came from telephone number (915) 205-7114.

47.     Ms. Starling did not answer the call.

48.     On January 29, 2024, at around 4:07pm, Ms. Starling received another call from telephone number (915) 205-7114.

49.     When Ms. Starling answered the call, the caller stated: "This is Tony, your Saving Advisor and I am calling you to give you some information about the new type of doctor's office in your neighborhood. And, they provide full comprehensive primary care services to all Medicare members."

50.     This script was substantially identical to the script read to Ms. Starling during the October 13, 2023 call that Ms. Starling received.

51.     Even though the script made it appear as though the Oak Street telemarketer knew the location of Ms. Starling's "neighborhood", he asked her for her zip code.

52.     Ms. Starling asked Oak Street's telemarketer what company he was with, and he confirmed that he was with Oak Street.

53.     Oak Street's telemarketer then stated that another representative would call Ms. Starling back at a later, more convenient, time to provide her with more information about Oak Street and its offerings.

7

54. Oak Street's telemarketer then asked Ms. Starling for her first and last name, and attempted to gather other information from Ms. Starling, such as her address and date of birth.

55. Upon information and belief, Oak Street uses telemarketing "fronters" to cold call individuals and identify potential Medicare members who are eligible for its services as a part of its advertising efforts.

56. Once Oak Street's "fronters" identify potential customers, Oak Street's "closers" call the customers and sell its services to the potential patients identified as leads by its "fronters."

57. Ms. Starling did not provide prior express invitation or permission or consent for these telephone calls.

58. Oak Street did not have the required policies or procedures at the time of the calls it made to Ms. Starling and Class members.

59. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA and its regulation, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the failure to honor Ms. Starling's stop request.

60. Oak Street's violations were negligent.

61. Alternatively, Oak Street's violations were willful and knowing.

62. Ms. Starling and the Class members were damaged by the violations alleged herein. Their privacy was improperly invaded, Oak Street's calls temporarily seized and trespassed upon the use of their phones and phone lines, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. Oak Street's telephone calls were annoying and a nuisance, and wasted the time of Ms. Starling and the Class members. *See, e.g., Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

63.     Oak Street is not registered as a solicitor with the Texas Secretary of State.

### DEFENDANT'S LIABILITY

64.     Because Oak Street's calls constitute telemarketing, Oak Street was required to obtain prior express written consent from the persons to whom Oak Street made calls.

65.     "Prior express written consent" is specifically defined by statute as:

> "[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(8).

66.     Ms. Starling never provided Oak Street with any consent, written or otherwise.

67.     Oak Street used automated systems to make unsolicited outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

68.     Oak Street made two or more telephone solicitations to Ms. Starling, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

69.     Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Starling is entitled to $500 per call through 47 U.S.C. § 227(c).

70.     Ms. Starling is entitled to $1,500 per call if the actions are found to be knowing or willful.

71.     Oak Street placed two or more telemarketing calls to Ms. Starling, despite not having in place the required policies and procedures prior to making such calls.  This constitutes a

violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

72.     Oak Street's lack of policies and procedures is evidenced by its failure to honor Ms. Starling's do-not-call request.

73.     Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Starling is entitled to $500 per call through 47 U.S.C. § 227(c).

74.     Ms. Starling is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

75.     Ms. Starling brings this action under Fed. R. Civ. P. 23 on behalf of three proposed "Classes," defined as follows:

> **Registry Class**. Plaintiff and all persons within the United States to whose telephone number Oak Street (or its agent) placed two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls, from four years prior to the filing of the Complaint.

> **Policy Class**. Plaintiff and all persons within the United States whose telephone number Oak Street (or its agent) placed two or more telemarketing calls in a 12-month period, and Oak Street's records reflect that one or more calls were placed after that person made a do-not-call request, from four years prior to the filing of the Complaint.

> **Texas Class**. Plaintiff and all residents of the State of Texas to whose telephone number Oak Street (or its agent) placed a telephone solicitation when Defendant did not have a registration certificate from the Office of the Secretary of State of Texas, from four years prior to the filing of the Complaint.

(The Registry Class, the Policy Class, and the Texas Class are collectively referred to herein as the "Classes.")

76.     Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

77.     The members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

78.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendant made the telephone calls;

- The telephone numbers to which Defendant made telephone calls;

- The telephone numbers for which Defendant had prior express written consent;

- The purposes of such telephone calls; and

- The names and addresses of Class members.

79.     The Classes are comprised of hundreds, if not thousands, of individuals.

80.     There are common questions of law and fact affecting the rights of the members of the Classes, including, *inter alia*, the following:

- Whether Defendant makes telemarketing calls;

- Whether Defendant obtains prior express written consent;

- Whether Defendant makes solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

- Whether Defendant had the required policies and procedures prior to making telemarketing calls;

- Whether Defendant's statutory violations were willful and knowing; and

- Whether Defendant should be enjoined from engaging in such conduct in the future.

81.     Plaintiff is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, and while her telephone number was on the National Do-Not-Call Registry.

82.     Plaintiff's claims are typical of the claims of the members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

83.     Plaintiff and all Class members have also necessarily suffered concrete harm in addition to statutory damages, as all members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

84.     Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

85.     Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

86.     Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

87.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

88.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

89.     Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

90.     Plaintiff and the Registry Class incorporate the allegations of paragraphs 1-89 as if fully set forth herein.

91.     Defendant made telephone solicitations to Plaintiff's and Registry Class members' telephone numbers.

92.     Plaintiff's and Registry Class members' telephone numbers were all on the National Do-Not-Call Registry at least 31 days prior to the time of the calls.

93.     Plaintiff and Registry Class members each received two or more such calls in a 12-month period.

94.     Plaintiff and Registry Class members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

95.     Oak Street knowingly and willfully violated the TCPA. Plaintiff and Registry Class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

### SECOND CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

96.     Plaintiff and the Policy Class incorporate the allegations of paragraphs 1-89 as if fully set forth herein.

97.     Defendant made two or more telemarketing calls to Plaintiff and Policy Class members' telephone numbers in a 12-month period.

98.     Defendant did so despite not having a written policy as required by the TCPA.

99.     Defendant did so despite not providing its personnel engaged in telemarketing with adequate training.

100.    Plaintiff and the Policy Class members made requests to not receive future solicitations.

101.    Defendant failed to honor Plaintiff's and Policy Class members' opt-out requests.

102.    Defendant has violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide adequate training to its personnel engaged in telemarketing; (3) maintain an internal do-not-call list and honor consumer opt-out requests; and (4) honor opt-out requests.

103.    Plaintiff and Policy Class members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

104.    Defendant knowingly and willfully violated the requirements of section 64.1200(d). Plaintiff and Policy Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**THIRD CAUSE OF ACTION**
**Violations of Texas Business and Commerce Code, Chapter 305**
**(On Behalf of Plaintiff and the Texas Class)**

105.    Plaintiff and the Texas Class incorporate the allegations of paragraphs 1-89 as if fully set forth herein.

106.    "A seller may not make a telephone solicitation from a location in [Texas] or to a purchaser located in [Texas] unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Comm. Code § 302.101.

107.    Defendant is a seller subject to the registration requirement.

14

108. Defendant failed to obtain a registration certificate.

109. Defendant placed telephone solicitations to Plaintiff's and the Texas Class members' telephone numbers while not being registered as required.

110. Defendant's telephone solicitations were made to Plaintiff and the Texas Class members located in Texas.

111. Plaintiff and the Texas Class members are entitled to an award of up to $5,000 for each violation and all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing her counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages;

F. An award of court costs, expenses, and attorneys' fees; and

G. Such other and further relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Plaintiff KIMBERLY STARLING, on behalf of herself and others similarly situated,

By: /s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr.
Jeffrey D. Blake
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
tom@attorneyzim.com
jeff@attorneyzim.com

Max S. Morgan
THE WEITZ FIRM, LLC
1515 Market Street #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

*Counsel for Plaintiff and the Putative Classes*